UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ROBERT HOSSFELD, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELEPHANT INSURANCE COMPANY, a Delaware corporation, ELEPHANT INSURANCE SERVICES, LLC, a Delaware limited liability company, and ADMIRAL GROUP, PLC, a foreign corporation,<br><br>Defendants. | Case No: 6:16-cv-00130<br><br>CLASS ACTION<br><br>Complaint for Damages and Injunctive Relief Pursuant to The Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. |

**COMPLAINT**

Plaintiff, Robert Hossfeld, brings this action against Defendants, Elephant Insurance Company, Elephant Insurance Services, LLC, and Admiral Group, PLC, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C § 227, for injuries caused by Defendants' unsolicited calls made to the cell phone of Plaintiff and others using an automated telephone dialing system, or an artificial or prerecorded voice. Defendants' illegal conduct resulted in the invasion of Plaintiff's privacy and caused diminished utility of Plaintiff's cellular telephone.

It is well understood that "the right to be let alone" is one of the most valued rights in a civilized society. *See Olmstead v. United States*, 277 U.S. 438 (1928). Moreover, Courts in the State of Texas have recognized that, "[t]he right of privacy is a right distinctive in itself and not incidental to some other recognized right for breach of which an action for damages will lie." *Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex. 1973). Plaintiff, for his class action complaint,

1

alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff, Robert Hossfeld, ("Plaintiff") is an individual citizen of the State of Texas.

2. Defendant, Elephant Insurance Company, is organized under the laws of the State of Delaware with its principle place of business located at 140 East Shore Drive, Suite 300, Glen Allen, Virginia 23059. Elephant Insurance Company provides and sells automobile insurance in the states of Texas, Maryland, Virginia, and Illinois.[1]

3. Defendant, Elephant Insurance Services LLC, is organized under the laws of the State of Delaware with its principle place of business at 140 East Shore Drive, Suite 300, Glen Allen, Virginia 23059. Elephant Insurance Services LLC, does business throughout the United States, including the State of Texas, where it has a registered office: CT Corporation System 1999 Bryan St., St. 900, Dallas, Texas 75201.  Pursuant to Texas Law, the authorized persons to accept service on behalf of CT Corporation System are: Amber Carrouth, Sharla Russell, Tracie Hollywood, or Jennifer Duddingham.  Elephant Insurance Services LLC is a registered business entity in Maryland, Virginia, and Illinois. Elephant Insurance Services LLC is an insurance intermediary that provides services such as brokering, record keeping, and claims investigations.[2] [Exhibit A].

---

[1] http://www.elephant.com/car-insurance/texas (Last Accessed: May 6, 2016).
[2] http://www.vaiasiu.com/Portals/26/Elephant%20Insurance%20Services.pdf (Last Accessed: May 6, 2016).

4. Defendant, Admiral Group, PLC, is a foreign corporation based in Cardiff, United Kingdom. Elephant Insurance Company and Elephant Insurance Services are wholly operated subsidiaries of Admiral Group, PLC.[3] Based on their corporate structure, it is believed that Admiral Group PLC has direction and control over the joint marketing campaigns of its wholly owned subsidiaries, Elephant Insurance Company and Elephant Insurance Services.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over the claims in this case under 28 U.S.C § 1331 because this action arises out of a violation of federal law, the Telephone Consumer Protection Act, 47 U.S.C § 227 *et seq.*

6. Venue is appropriate in this district pursuant to 18 U.S.C § 1391(b), because Elephant Insurance Services has a registered office here; both Elephant Insurance Company and Elephant Insurance Services LLC purposefully availed itself to the resources and protection of the State of Texas by doing business in the state; and a substantial part of the events giving rise to Plaintiff's claims occurred here, including the unwanted call that to Plaintiff's cellular telephone using an automatic telephone dialing system. Admiral Group, PLC, is vicariously liable for the violative conduct committed by its subsidiaries including but not limited to the joint marketing plan involving Defendants Elephant Insurance Company and Elephant Insurance Services. The exercise of personal jurisdiction over the Defendants in this District does not offend the traditional notions of fair play or substantial justice.

## A BRIEF OVERVIEW OF THE TCPA

7. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims*

---

[3] http://www.elephant.com/about/elephant-auto-insurance (Last Accessed: May 6, 2016). *See also:* https://admiralgroup.co.uk/subsidiary-companies (Last Accessed: May 6, 2016).

*v. Arrow Fin. Services, LLC*, 132 S. Ct. 740, 746 (2012). In 2015, the FTC received over 250,000 consumer complaints regarding telephone and mobile telephone services.[4] "Consumer complaints about abuses of telephone technology- for example, computerized calls to private homes- prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C § 227.

8. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Red 14014 (2013).

9. The TCPA prohibits calls made to cellular phones through the use of automatic telephonic dialing system (also known as an "autodialer" or "ATDS") or an artificial or prerecorded voice, unless the call was made for emergency purposes or with the "[p]rior express consent of the called party." 47 U.S.C § 227(b).

10. Since October 2013, the TCPA requires different levels of consent depending the whether the nature of a call is for telemarketing or non-telemarketing purposes. Non-telemarketing calls, such as informational and non-commercial calls require a consumer's "prior express consent." However, telemarketing calls require a consumer's "prior express written

---

[4] Debt Collection, Identity Theft, and Imposter Scams Remain Top Categories of Complaints Received by FTC in 2015, https://www.ftc.gov/news-events/press-releases/2016/03/ftc-releases-annual-summary-consumer-complaints (Last Accessed May 3, 2016.)

consent." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 at *11.

11. "Prior express" consent for telemarketing calls now require a prior, signed, written agreement, specifically agreeing to receive telemarking calls or text messages via auto-dialer/or pre-recorded voice. 47 U.S.C. § 227 (b)(1)(A); 47 C.F.R. § 64.1200(a)(1)

12. In interpreting the "definition of automatic telephone dialing system, the FCC noted the basic function of such equipment was, "the *capacity* to dial numbers without human intervention." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 at *13. In doing so, it interpreted "automatic telephone dialing system" to include equipment that utilizes lists or databases of known, nonrandom telephone numbers. *See generally, Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011). On July 10, 2015, the FCC issued a Declaratory Ruling and Order that expanded the TCPA by redefining an ATDS to include any equipment that has the "potential ability" to dial numbers randomly or sequentially, nothing that "little or no modern dialing equipment would fit the statutory definition of an autodialer" *See also In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72, 30 F.C.C.R. 796 (July 10, 2015).

13. To demonstrate a violation of the TCPA, the Plaintiff only need show that Defendants called a number assigned to a cellular telephone service and the reasons for [his] contention that defendant employed an automatic dialing system or prerecorded voice. *Crawford v. Target Corp.*, 3:14-CV-0090-B, 2014 WL 5847490, at *4 (N.D. Tex. 2014).

14. Critically, the TCPA creates a private right of action for affected consumers, and allows them to recover the greater of their actual monetary loss or up to $500 per call for each

violation. 47 U.S.C. § 227(b). It also allows the district court to increase the award up to treble statutory damages if it finds the defendant's violation was willful or knowing. *Id*. *See also Mims,* 132 S. Ct. at 746.

## FACTUAL ALLEGATIONS

15. Elephant Insurance Company is an insurance company that provides homeowners, automotive, motorcycle and life insurance, among other things in the state of Texas.

16. On February 19, 2016 Plaintiff answered a call on his cellular phone from an unidentified phone number (877) 321- 9908. [Exhibit B].

17. Upon Plaintiff answering the phone, there was a pause, until he was connected to a live service representative.

18. The service representative asked to speak to an unknown entity or to her husband. Plaintiff asked the service representative to identify what company he worked for. Service representative ignored Plaintiff's question and again asked for the unknown entity or her spouse.

19. Plaintiff requested to speak to a supervisor. Upon connecting with the supervisor, Plaintiff asked the name of the company and where they were located. Plaintiff further asked about how they came into possession of cellular telephone number and whether or not they used autodialers.

20. The supervisor stated that he worked for Elephant Auto Insurance and that they received Plaintiff's cellular number from an online submission; however, supervisor was silent as to whether they used of autodialers. Furthermore, supervisor was not clear as to whether he worked for Elephant Insurance Company or Elephant Insurance Services, LLC.

21. Plaintiff never applied for an insurance quote from Elephant Auto Insurance, nor furnished his cellular telephone number to the Elephant Auto Insurance as part of an online submission.

22. Moreover, Plaintiff has never furnished this cellular number for business use, and the number has been in the National "Do-Not Call" Registry in August 2015.

23. Plaintiff's experience is corroborated by numerous consumer complaints appearing online, which indicate that Elephant Auto Insurance placed calls to consumers without consent and on a repeat basis. [Composite Exhibit C].

24. One complaint online states that, "[Elephant] call 3 and 4 times a day. I don't answer but it shows 800 service then number underneath 877 321 9908. Sickening." [Composite Exhibit C].

25. Upon this information and belief, when Plaintiff answered the phone, the brief pause experienced by Plaintiff allowed Elephant Auto Insurance's computer system to connect Plaintiff with a live representative.

26. Upon this information and belief, this voice call from Elephant Auto Insurance was made using an autodialer - *i.e.*, equipment with the capacity to dial phone numbers without human intervention.

27. Upon this information and belief, it was the intent of Elephant Auto Insurance to solicit the Plaintiff into purchasing automobile insurance from Defendants through the utilization of a formulated telemarking strategy.

28. Upon this information and belief, Elephant Auto Insurance has made, or had made on its behalf, the same (or substantially the same) telephone calls *en masse* to thousands of

telephone numbers or randomly generated phone numbers, across Texas, Maryland, Virginia, and Illinois where Defendants provide insurance.

29. Critically, Plaintiff has never had any relationship whatsoever with any "Elephant" company; specifically neither Elephant Insurance Services LLC nor Elephant Insurance Company. Discovery will reveal which entity was calling and if these calls were part of joint marketing effort, but in either case, Admiral Group, PLC, is liable.

30. Upon this information and belief, Elephant Auto Insurance employed a telephone marketing strategy that utilized an automated telephone dialing system to contact prospective consumers in Texas, Maryland, Virginia, and Illinois at the directive of Elephant Insurance Company and/or Elephant Insurance Services LLC.

31. Upon information and belief, Admiral Group, PLC directs the marketing strategies of its Elephant subsidiaries in the United States. At the very least, Admiral Group, PLC, Elephant Insurance Company, and Elephant Insurance Services, LLC are joint venturers, each acting for the benefit of the other and jointly and severally liable for the damages arising from the violative calling practices herein.

32. Upon this information and belief, this marketing strategy employed by Elephant Insurance Company and/or Elephant Insurance Services LLC was under the direction and control of Admiral Group PLC in furtherance of the Defendants' joint marketing campaign.

33. Plaintiff was damaged by Elephant Auto Insurance's conduct; (1)Plaintiff's privacy wrongfully invaded; (2) he was billed for the call under his cellular plan and; (3) his cellular phone suffered a loss of memory and battery life as a result of the call. In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class

of similarly situated individuals, bring suit under the TCPA. *See Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex. 1973).

## CLASS ALLEGATIONS

34. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and the two classes of similarly situated individuals defined as follows:

> Elephant Telemarking Class: (i) all persons in the United States; (ii) who received at least one call from Defendants or some party on their behalf; (iii) to their cellular phone; (iv) from an automatic telephone dialing system; (v) for purposes of marketing Defendants' products or services; (vi) who did not previously provide prior express written consent to Defendants.
>
> Elephant Informational Class: (i) all persons in the United States; (ii) who received at least one call from Defendants or some party on their behalf; (iii) to their cellular phone; (iv) from an automatic telephone dialing system; (v) for information purposes regarding Defendants' products or services; (vi) who did not previously provide prior express consent to Defendants.

35. **Numerosity:** The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have made telephone calls to thousands of consumers' cellular telephones throughout Texas, Maryland, Virginia, and Illinois who fall into the definitions of the proposed classes. Members of the Class can be identified through Defendants' records.

36. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

37. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

38. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the follow:

    a. whether Defendants' conduct violated the TCPA;

    b. whether Defendants used random digit dialing or made calls from a database of numbers;

    c. whether Defendants systematically made phone calls to persons who did not previously provide Defendant with their prior express consent to receive such calls;

    d. Whether class members are entitled to treble damages based on the willfulness of Defendants' conduct.

39. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods of fair and efficient adjudication of this controversy because of joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expensive of individual prospection of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation

would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violations of the TCPA 47 U.S.C. § 227

40. Plaintiff realleges and incorporates the foregoing allegations as fully set forth herein.

41. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a cellular telephone service…" 47 U.S.C. § 227(b)(1)(A)(iii).

42. Defendants' violation of the TCPA resulted in an invasion of Plaintiff's privacy and right to enjoy the full utility of his cellular device.

43. Defendants are directly and/or vicariously liable for the violations above.

44. As such, Defendants' calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227.

Defendants have, therefore, violated Section 227(B)(1)(A) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phone of the Plaintiff.

45. Should the Court determine that Defendants' misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and other members of either Elephant Class.

## JURY DEMAND

46.     Plaintiff requests a trial by jury of all claims that can be so tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the Class, prays for the following relief.

   a.   An order certifying the Class as defined above, appointing Plaintiff Robert Hossfeld as the representative of the Class, and appointing his counsel as Class Counsel;

   b.   An award of actual and statutory damages;

   c.   An injunction requiring Defendants to cease all unsolicited calling activities, and otherwise protecting the interests of the Class,

   d.   An award of reasonable attorneys' fees and costs; and

   e.   Such other and further relief that the Court deems reasonable and just.


Respectfully submitted,

**LAW OFFICES OF DAVID P. SCHAFER**

By: /s/ Brian J. Trenz
Brian J. Trenz
Brian@helpingtexas.com
David P. Schafer
2139 N.W. Military HWY, Suite 200
San Antonio, TX 78213
(210) 348-0500 phone
(210) 348-0520 fax
*Attorneys for Plaintiff*

/s/ Scott D. Owens
SCOTT D. OWENS, ESQ.
*Attorney for Plaintiff*
Florida Bar No. 059765
3800 S. Ocean Dr., Suite 235
Hollywood, FL 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
scott@scottdowens.com
To Request Admission Pro Hac Vice